**AETNA LIFE INS. CO. v. KRAMER et al.**

No. 5782—Opinion Filed May 15, 1917.

(165 Pac. 179.)

1. Appeal and Error—Jurisdiction of Supreme Court—Order Overruling Motion for New Trial—Statute.

Under the second subdivision of section 5236, Rev. Laws 1910, this court has juris-

diction to reverse, vacate, or modify an order overruling motion for new trial, notwithstanding the judgment has not been entered on the verdict, where there is a verdict in a case tried to a jury.

**2.  Insurance—Statutes—Construction.**

Sections 3420-3434, inclusive, Rev. Laws of Oklahoma 1910, do not fix the contractual relations between insurance companies doing business in the state and their agents, but this is regulated by contract. The statutes above were not enacted to regulate the relations between insurance companies and their agents, but for the protection of the insuring public.

**3.  Trial—Power of Trial Court—Reprimand of Witness.**

Trial courts in the exercise of their judicial prerogative have a right to reprimand a witness who, contrary to the admonition of the court, persists in making voluntary statements not elicited by his examination. The admonition, however, must not be done by word, sign, token, or gesture that would indicate the opinion of the trial court as to the merits of the case, or the truth or falsity of testimony of the witness reprimanded.

(Syllabus by West, C.)

Error from County Court. Tulsa County; Conn Linn, Judge.

Action by the Aetna Life Insurance Company, a corporation, against Phil Kramer, John T. Kramer, and Otto Kramer, doing business under the firm name and style of Kramer Bros. Judgment for defendants, and plaintiff brings error. Affirmed.

Martin & Moss, for plaintiff in error.

Rice & Lyons, for defendants in error.

Opinion by WEST, C.  Plaintiff in error attached to their brief a motion to dismiss appeal in this cause, because the case-made fails to contain any final judgment of the court rendering judgment for defendants. The record shows verdict, motion for new trial, and judgment overruling motion for new trial, and provides for an appeal, giving the time to make and serve case-made and providing for a supersedeas.  Under the law announced in the case of Roof v. Franks, 26 Okla. 392, 110 Pac. 1098, and Phillips v. Oliver, 53 Okla. 168, 155 Pac. 586, this court has jurisdiction to review, vacate, or modify an order overruling motion for new trial, where there is a verdict in a case tried to a jury, notwithstanding a judgment has not been entered on the verdict, and motion to dismiss will be overruled.

This is a suit instituted by the Aetna Life Insurance Company, plaintiff in error, which will hereafter be designated plaintiff, to recover from Kramer Bros., defendants in error, who will hereinafter be designated as defendants, money alleged by plaintiff to be due it on account of premiums collected by the defendants.  The plaintiff alleged that the defendants were acting as its agents under a verbal appointment made by C. H. Verschoyle, a general agent of the plaintiff. Defendants denied that they were the agents of plaintiff, and alleged that they were acting as agents or brokers for Verschoyle & Co., general agents of plaintiff, in the matter of soliciting and collecting the insurance in controversy, and that they had settled in full with Verschoyle & Co.

There are only two issues presented by the pleadings and argued in the brief by plaintiff:  First. As to whether or not defendants were, as a matter of law, agents of the plaintiff at the time complained of.  Second.  As to the misconduct of the trial judge in directing certain remarks to witness of plaintiff while on the stand.  We will now consider the first question presented by the pleadings and evidence.  Plaintiff contends that, as a matter of law, the defendants, Kramer Bros., were the agents of the plaintiff under and by virtue of the statutes of the state regulating insurance companies, and particularly section 3431, Revised Laws of the State of Oklahoma of 1910, which is as follows:

"Sec. 3431.  Who Deemed an Agent. Any person who for compensation solicits insurance on behalf of any insurance company, or transmits for a person other than himself an application for a policy of insurance to or from such company, or offers or assumes to act in the negotiating of such insurance, shall be an insurance agent within the intent of this article, and shall thereby become liable to all the duties, requirements, liabilities and penalties to which an agent of such company is subject."

In order to properly ascertain the force of this section and the intent of the Legislature in passing the same, it is necessary to consider in connection therewith at least a portion of the article of which this section is a part, and particularly section 3434, which is as follows:

"Sec. 3434.  Resident Agents for Foreign Companies—Exceptions.  Foreign companies admitted to do business in this state shall make contracts of insurance upon lives, property, or interests herein, only through lawfully constituted and licensed resident agents: Provided, that this section shall not apply to direct insurance covering the rolling stock of railroad corporations, or property received for shipment from one state to another while in the possession or custody of railroad corporations or other common carriers."

It will be noted that by the provisions of the above sections there is a concurring ob-

ligation on the part of an insurance company doing business in the state and agents soliciting risks for it: First, upon the company to procure and pay for a license for its agents, which license is a written authority of such agents soliciting and procuring risks, and prohibiting companies from making contracts of insurance upon lives, property, or interest except through lawfully · constituted and licensed resident agents, and upon agents to have this license before soliciting risks for insurance companies, and fixing personal liability upon an agent if he assumes to act without such license.

It is our view that the statutes relied upon by the plaintiff do not support its contention, and were enacted by the state, not for the protection and regulation of the intercourse of insurance companies and their agents, or to fix their contractual relations, but for the protection of the insuring public. An insurance company doing business in the state certainly could not violate the statute by failing to procure and pay for a license for its agents, and accept risks from unlicensed agents, and then invoke the provisions of the same law to establish the fact of the agency, and to fix the contractual relations of its agents to itself. As between the insured and the company, the defendants were under the statute quoted, as a matter of law, the agents of the company; but as to the relations of the insurance company and its agents the state is not or was not concerned, and their relations would depend upon contract. We therefore cannot say, as a matter of law, the status of the insurance company and their agents as between themselves is fixed by statute, but, on the contrary, we think it is regulated by contract. Welch, Insurance Commissioner, v. Maryland Casualty Company et al., 47 Okla. 293, 147 Pac. 1046. The issue as to whom defendants were representing, whether plaintiff or Verschoyle & Co., at the time the insurance was solicited and collected for by defendants, was sharply drawn and fairly submitted by the trial court, and the jury by their verdict found that the defendants were the agents of Verschoyle & Co., and we are therefore bound by such finding.

The last assignment of error complained of being the misconduct of the trial judge in directing certain remarks to the witness of plaintiff while upon the stand, and in the presence of the jury, is in our opinion the most serious urged. It is difficult to state in this opinion the language of the court complained of, which should be considered in the light of its context, the principal part of which may be found in case-made, pages 51-53, inclusive, and is as follows:

"The Court: Just answer the questions; we are running this business; and confine yourself to the points in controversy.

"Mr. Moss: I don't think that is proper, if the court pleases.

"The Court: I think that is true; but where you have a witness that knows more than the attorneys on both sides of the case—

"Mr. Moss: We except to the remarks of the court.

"Mr. Lyons: Mark that Exhibit A. (The same is so marked for purposes of identification.)

"Q. Is that the signature of Verschoyle & Kahle? A. That is the signature of Verschoyle & Kahle. That was on Verschoyle & Co.

"The Court: Wait there a minute. Put all the remarks down there; put all the remarks of the court down there; the court is going to remark a good deal directly; put it all in there for the attorneys on both sides, and put in there as they say, and that the witness was a very talkative witness, and would not confine himself to the questions of the attorneys. Put it in there so you can get it reversed good and proper.

"Mr. Moss: I do not mean any disrespect at all to your honor, but in order to protect the right of my clients we except to the remarks, to all the remarks, of the court.

"The Court: You have a right to your exception; and I have asked this witness half a dozen times to answer the question and confine himself to the questions, but he does not do so.

"The Witness: If your honor pleases, may I state something now?

"The Court: That is it; you have stated too much now; put it all down there, and I will write more and put it in there.

"Mr. Bush: To every remark of the court the plaintiff excepts.

"The Court: I want to try the case fairly on both sides, and give every one a chance; but it does not embarrass me a bit to get reversed every time you want to reverse me."

Our court, speaking through Judge Gillette, in City of Newkirk v. Dimmers, 17 Okla. 525, 87 Pac. 603, said:

"In the trial of a cause before a jury, it is the province of the the jury alone to weigh the testimony of witnesses, and give to it such credence as in their judgment they believe it entitled to, uninfluenced by the judge before whom the cause is being tried. That a trial judge may exert an influence over a jury without speaking to them, and perhaps unconsciously, by mere demeanor or conduct touching the subject under investigation, is undoubtedly true, and where such influence

has been exerted appellate courts have invariably held the trial to have been erroneous."

And in case supra the trial judge indicated that the testimony of the witness was untrue and unworthy of consideration. In fact, Judge Gillette, before laying down the rule quoted above, said:

"It is impossible to read the testimony here quoted without reaching a conclusion that the testimony of Minnie Eads was by such examination criticized as being untrue, and as having been 'procured'—in fact, false."

Not so in the instant case. The trial judge was criticizing the manner of the witness in testifying and his efforts to inject in his testimony statements not responsive to the questions asked. The court at no time indicated that the witness was unworthy of belief, or was testifying falsely, but only too voluble. The courts have and should have authority to conduct trials in an orderly manner in accordance with the rules of evidence, and when a witness insists on voluntary statements not elicited by his examination, and contrary to the admonition of the court, then it is the duty of the court to use his judicial prerogative to maintain the dignity and decorum of his court. He should not, however, do this in any way, either by word, sign, token, or gesture, that would indicate his opinion as to the merits of the case, or the truth or falsity of the testimony of the witness reprimanded, and if he does, the aggrieved party should be entitled to a new trial. However, in this case we don't believe the action of the trial judge transcended his inherent power to conduct the trial in an orderly manner along the rules of established practice and usage. The court merely admonished the witness to answer the questions asked without incumbering the record with his voluntary statements. It is true the language of the trial court might have been couched in more appropriate and sedate diction; but in the midst of the trial on occasions of this sort it is hard for a trial judge to choose the language of a diplomat, and where he does not invade the province of the jury by indicating his opinion as to the merits of the case or the weight and credence to be given to the witness' testimony, we do not think it should require a reversal of the case, especially where it is not apparent that the aggrieved party has suffered injury or defeat on account of the conduct complained of. Love v. Reynolds, 36 Okla. 297, 128 Pac. 242.

Finding no reversible error, the judgment of the lower court should be and is affirmed.

By the Court: It is so ordered.