# JULIUS ANDERSON, Appellant, v. NORTHWESTERN FIRE & MARINE INSURANCE COMPANY, a Corporation, Respondent.

(201 N. W. 514.)

**Insurance — licensed agent held to have power to renew orally fire policy notwithstanding policy expiration several days before renewal agreement; "agent of insurance company".**

1. A person in this state, licensed as an insurance agent by the commissioner of insurance, who solicits insurance in behalf of a foreign insurance company, or transmits applications for a policy of insurance, or collects a premium, or in any manner aids in doing either, or in transacting business of a like nature, is, under § 4959, Comp. Laws, 1913, an agent of the insurance company to all intents and purposes, and may enter into an oral agreement to renew a policy of fire insurance which contains a stipulation that it may be renewed on the same conditions if the hazard has not increased, and such oral agreement is binding on the corporation, notwithstanding the original policy had expired several days before the renewal agreement was made.

**Insurance — law defining agents controls contrary policy stipulations.**

2. Section 4959, Comp. Laws, 1913, controls contrary stipulations in the policy.

Opinion filed November 1, 1924. Rehearing denied December 6, 1924.

Evidence, 23 C. J. § 1814 p. 64 n. 90 New; § 1838 p. 73 n. 96. Fire Insurance, 26 C. J. § 108 p. 109 n. 16, p. 110 n. 30 New; § 112 p. 112 n. 61, 65 New. Insurance, 32 C. J. § 132 p. 1057 n. 9, 10, 10 New, 11, 15 New; § 134 p. 1058 n. 30; § 140 p. 1063 n. 99; § 252 p. 1145 n. 75, 83, 88 New.

Appeal from the District Court of Ramsey County, before *Burr,* J. Reversed.

*Fred Stevens* and *Wm. Anderson,* for appellant.

If the insurer sends a renewal slip or solicitation for a renewal of the policy, that furnishes a sufficient reason why this case should have been submitted to the jury. The point being that if the evidence shows a solicitation for a renewal the insured has only to accept. American Can Co. v. Agricultural Ins. Co. 150 Pac. 996.

Note.—(1) Statute as to power of agent of foreign insurance company, see 14 R. C. L. 873.

Foreign companies admitted to do business in this state shall make contracts of insurance upon property and interests therein only by lawfully constituted and licensed resident agents who shall countersign all policies so issued and any such insurance company who shall violate any of the provisions of this section shall suffer a revocation of its authority to do business by the superintendent of insurance in this state, in addition to the penalty provided in section 6322. Prichard v. Connecticut F. Ins. Co. 203 S. W. 222.

In an action for a renewal agreement made by defendant's agent evidence of a custom on the part of the agent to extend credit for premiums is admissible. McCabe v. Ætna Ins. Co. 9 N. D. 19, 81 N. W. 426.

No agent can make, alter or discharge this policy or extend the time for the payment of premiums, nor can the policy be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the company, signed by the president or secretary, whose authority will not be delegated. Lechler v. Montana L. Ins. Co. 186 N. W. 271.

If the language of the policy is ambiguous and susceptible of more than one construction, it should be conspired strictly against the insurer, who prepared it and liberally in favor of the insured, and this rule has been applied with particular force to conditions and exceptions in the policy, especially those clauses which relate to matters after the loss, or provided for forfeiture, and it has been held that if the words are susceptible of the interpretation given them by the insured, the policy will be construed in his favor. Johnson v. Yorkshire Ins. Co. 195 N. W. 45.

*Fowler, Green & Waltam,* for respondent.

The making of an application is, however, merely a step in the creation of a contract. As was said in Lee v. Guardian L. Ins. Co. Fed. Cas. 8190, the rights of the applicant are not concluded by the making out of the application. When the application is made out and forwarded to the company, it is not yet a contract of insurance. It has then only attained the position of a proposition on one side, and must be accepted on the other. That is to say, until it is accepted by *someone having authority to accept the terms proposed,* the application is not a contract, but merely a proposition. 1 Cooley, Briefs on Ins. p. 413.

An insurance company is not liable for the negotiations of its agent in failing to forward an application accompanied by payment of premium, so that the property is destroyed without insurance, where he had authority only to solicit applications, deliver policies, and receipt for initial premiums, and the application stipulated that there should be no contract until the issuance and delivery of the policy. National Union Fire Ins. Co. v. School Dist. (Ark.) L.R.A.1916D, p. 238; St. Paul F. & M. Ins. Co. v. Kelly (Neb.) 89 N. W. 997; Pickett v. Ins. Co. (Kan.) 18 Pac. 903.

It is not according to the popular notion of the meaning of the word "renewal" that it can take place only after the death or expiration of the subject to which it is applied. Carter v. Brooklyn L. Ins. Co. 110 N. Y. 15, 17 N. E. 396, 398.

JOHNSON, J. This is an action in which the plaintiff seeks to recover under an insurance policy which he claims was renewed. The policy was dated February 24, 1920, for three years, covering certain property. The plaintiff alleges that on or about the 14th of March, 1923, it was agreed between him and an agent of the defendant that the policy should be renewed for a period of three years upon the same terms and conditions and for the same premium as the original policy; that on the 15th of March, 1923, the property covered in the policy was destroyed by fire; and that the defendant had refused to make an adjustment or pay the loss, pursuant to the contract. The defendant answers, denying in substance that the policy was renewed; and alleges that the agent alleged to have entered into the renewal agreement was "only authorized to transmit to this defendant applications for insurance and that insurance upon said class of property could only be issued by the home office of the defendant corporation. Defendant further alleges that no application for insurance on the part of the plaintiff was ever transmitted to defendant corporation at any time subsequent to February 24, 1923."

At the trial, plaintiff called one Kavanaugh for cross examination under the statute on the theory that he was an agent, or a managing agent, of the defendant, with offices at Crary, in this state. It was he who made the alleged renewal agreement. Kavanaugh testified that he held a license from the commissioner of insurance, as agent of the de-

fendant at Crary; that he had been acting as local agent of the company for twenty years; that his duties as agent were "to solicit insurance, to take applications and issue policies on city property, and to take applications for farm property" and to accept premiums paid and remit the proceeds, less his commissions. Witness was then shown Exhibit 2, being the policy of insurance dated February 24, 1920, issued to the plaintiff, and, after identification, it was offered and received in evidence. The policy bears upon its back the endorsement "M. D. Kavanaugh, Agent, Crary, N. D." The policy is also countersigned by the same person as agent, the countersignature being dated February 25, 1920. The concluding sentence of the policy is that "this policy shall not be valid until countersigned by the duly authorized agent of the company at Crary, N. D." The application on which the policy was issued is dated February 23, 1920, and the policy stipulates that the insurance runs from the 24th of February, 1920, at noon, until the 24th of February, 1923, at noon. The policy contains this provision: "In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company. This policy may by a renewal be continued under the original stipulation, in consideration of premium for the renewal term, provided that any increase of hazard must be made known to the company at the time of renewal, or this policy shall be void." When the policy was issued, the premium was not paid until some time in June, following, by agreement between the agent and the insured. Plaintiff testified that on the 14th of March, 1923, the agent Kavanaugh called at his home and that there was some conversation with reference to the policy. The court did not permit the plaintiff to state this conversation, on objection being made thereto by counsel for the defendant. The main objection was that the agent did not have authority with respect to the class of insurance involved to bind the company by any conversation and that until the authority was shown the conversation was hearsay and incompetent. Kavanaugh was then recalled and testified that he had received a notice from the company some time before he called at the home of the plaintiff, in which they asked him, with reference to the policy: "May we expect a renewal?" or words to that effect. The plaintiff made several efforts to prove the conversation between the agent Kavanaugh and the plaintiff, in which it was claimed that the

policy was renewed, but on objection the court did not permit the conversation to be shown either by the plaintiff himself or through the cross examination under the statute of the witness Kavanaugh. The plaintiff thereupon made several offers of proof. Plaintiff Anderson offered to prove the delivery to him of the policy which expired on the 24th of February, 1923, and the amount of the insurance; that on the 14th of March, the agent Kavanaugh visited the plaintiff's residence, "informed him that his policy had expired, and asked if he did not want him to renew the same. The plaintiff said that he would on the same terms and conditions as the policy contained; that the said agent then agreed to renew said policy;" that the property was destroyed by fire on the 15th of March, and that the defendant had refused to make any settlement on account of the loss. The plaintiff further offered to prove through the agent Kavanaugh substantially the same facts with reference to the alleged agreement of renewal, pursuant to the conversation on March 14, 1923. In addition, through this witness, plaintiff offered to prove that the agent agreed to waive the condition of the policy that the premium be paid in cash, but had agreed to extend payment thereof until the month of June, 1923, and that upon the said proposition having been made to the plaintiff, he accepted the same and renewed the policy. Other offers of proof were made, not material to be noticed in the view we take of the case. The court excluded the offers tending to show the agreement to renew and instruct the jury, in substance, that recovery could not be had unless the authority of the agent Kavanaugh to renew the policy after it expired was established, but that there was no evidence showing such authority. The jury returned a verdict for the defendant and the plaintiff appeals.

Numerous errors are assigned, but it is not necessary to discuss them in detail. The case turns upon the sufficiency of the evidence and the offer of proof to make an issue of fact for the jury, establishing authority in the agent Kavanaugh to enter into an agreement to renew the policy which expired by its terms on February 24, 1923. The defendant contends that the policy expired on February 24; that thereafter it could not be renewed; that a new application would have to be made and acted on by the home office; and that the agent had no authority to bind the company by agreeing to a renewal after the policy had expired.

Section 4926, Comp. Laws 1913, provides that "no insurance company shall do business in this state except through its authorized agents who must be residents of and have their office or place of business in this state. All policies not written in accordance with the foregoing provisions shall be deemed a violation of this article." Section 4959, Comp. Laws 1913 reads as follows:

"Whoever solicits insurance on behalf of any insurance corporation or person desiring insurance of any kind, or transmits an application for a policy of insurance, other than for himself, to or from any such corporation, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance corporation, or advertising to do any such thing, shall be held to be an agent of such corporation to all intents and purposes, unless it can be shown that he receives no compensation for such services. This section shall not apply to fraternal, assessment or beneficiary associations."

It will be noticed, first, that no insurance company may transact business in this state except through resident agents; secondly, that any person who solicits insurance in behalf of any company or transmits an application for a policy for a person other than himself, or who makes any contract for insurance, or who collects any premium for insurance, or who in any manner aids or assists in doing either, or in transacting any business of a like nature for an insurance corporation, is an agent of such company "to all intents and purposes," unless it appears that he receives no compensation for the service. The evidence and the offer of proof, if true, clearly show that Kavanaugh was a resident agent of the defendant; that he solicited insurance, transmitted applications, collected premiums and otherwise transacted an insurance business for and in behalf of the defendant. Under the statute, therefore, he would be an agent of the defendant "to all intents and purposes." It must be conceded that the situation is not different from what it would have been had the company expressly notified the plaintiff that Kavanaugh was their agent to "all intents and purposes." Evidence was put into the record by the defendant tending to show certain limitations upon the authority of the agent Kavanaugh, but there is no claim, or, at least, no evidence in the record showing, or

tending to show, that the plaintiff knew of any such limitations. As far as the plaintiff was concerned, Kavanaugh was the agent of defendant "to all intents and purposes" and he was at liberty to deal with him accordingly. Upon proof of the acts enumerated in the statute, plaintiff established the agency of Kavanaugh "to all intents and purposes."

Did Kavanaugh have the authority to renew the policy, after the date of its expiration, according to its terms? This is the crucial question in the lawsuit. Stated otherwise, was the plaintiff justified in relying upon the authority with which the statute clothed Kavanaugh as agent of the defendant "to all intents and purposes," and in negotiating with him for the renewal of the policy subsequent to the expiration date?

Statutes analogous to and, in some instances, identical with § 4959, supra, have been enacted in several states. See 32 C. J. 1057. Such a statute has been in force in the State of Wisconsin for many years, as §. 1977, of the Revised Statutes. That statute was enacted prior to § 4959, supra, and has been many times construed by the Supreme Court of Wisconsin. In Schomer v. Hekla F. Ins. Co. 50 Wis. 575, 7 N. W. 544, ¶ 4 of the syllabus reads:

"The object of § 1977, Rev. Stat. is to change the rule of law that the insured must at his peril know whether the person with whom he is dealing as an agent has the power he assumes to exercise, and to make an insurance company responsible for the acts of the person who assumes to represent and act for it, in soliciting insurance, issuing policies, etc."

The court refers to the title of the original statute which reads: "An Act to Protect the Public Against Unauthorized Insurance Agents," as indicative of the purpose the legislature had in view. The court then says:

"It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance in its behalf, or who receives applications for insurance, . . . whether such person *has in fact* authority to act for it or not." (Italics are ours.)

In Renier v. Dwelling House Ins. Co. 74 Wis. 89, 42 N. W. 208, speaking of the same section, the court say:

"The local agent here having performed those several acts in behalf of the company, and with its authority, the latter can not disclaim his agency in the *doing of anything necessarily implied. in the specific acts thus authorized.*" (Italics ours.)

The court then held, notwithstanding policy provisions to the contrary, that the local agent had authority to waive answers in the application and stipulations in the policy as to the condition of the property and the existence of incumbrances thereon. In Stehlick v. Milwaukee Mechanics' Ins. Co. 87 Wis. 322, 58 N. W. 379, the court held that under this section the local agent who had performed the acts therein enumerated was agent of the company "to all intents and purposes" and had power to bind the company by an *agreement to insure,* notwithstanding limitations of his powers as between himself and the corporation. To the same effect is Zell v. Herman Farmers' Mut. Ins. Co. 75 Wis. 521, 44 N. W. 829. In Prichard v. Connecticut F. Ins. Co. — Mo. App. —, 203 S. W. 223, it was held that a local agent who had power to solicit and take applications, collect premiums, countersign and deliver policies, may bind the principal by an oral contract of insurance. See also Ferguson v. Home Ins. Co. 208 Mo. App. 472, 236 S. W. 402; American F. Ins. Co. v. King Lumber & Mfg. Co. 74 Fla. 130, 77 So. 168, p. 174. A statute like 4959, supra, controls stipulations to the contrary in the policy. Continental L. Ins. Co. v. Chamberlain, 132 U. S. 304, 33 L. ed. 341, 10 Sup. Ct. Rep. 87. Oral contracts of renewal and oral agreements to renew are generally held valid. 15 A.L.R. 1010, note, the adoption of the standard policy by statute does not render such contracts invalid. 15 A.L.R. 1001 note.

The policy considered in McCabe Bros. v. Ætna Ins. Co. 9 N. D. 19, 47 L.R.A. 641, 81 N. W. 426, contained many conditions not substantially different from those of the policy in the case at bar. The authority of the agent in that case to enter into an oral agreement to renew was challenged. The authority of McBride there was substantially the same as the authority of Kavanaugh in the case at bar. McBride had "full power to receive proposals for insurance against loss or damage by fire; to act as surveyor, or to appoint surveyors, of buildings to be insured, or containing property to be insured, in St. Thomas and vicinity; and insurance thereon to make, by policies signed by the president, and attested by the secretary of said Ætna Insurance Com-

pany, and countersigned by the said William McBride, agent." It was held that McBride was a *general agent,* with power to enter into a binding executory contract by parol to issue or renew a policy in the future. While the statute does not specify surveying the premises as one of the acts, the doing of which makes one person the agent of the company, the record shows that Kavanaugh had this authority. The original application contains his signed statement of survey. Kavanaugh was an agent and his authority to renew would seem to be unquestionable under all the authorities. In the case of Post v. Ætna Ins. Co. 43 Barb. (N. Y.) 351, cited with approval in McCabe Bros. v. Ætna Ins. Co. supra, plaintiff relied on a renewal agreement with the local agent, which was made after the policy had expired. Defendant contended that it was not bound. The court say:

"So far as the exercise of his authority as agent is involved, it can make no difference that the time had expired for which the policy was issued. The possession and use of the defendant's certificates of renewal, together with the exercise of that authority in other instances, indicate that the power of renewing and continuing insurances had been conferred upon this agent. There is nothing in the case showing him to be confined or restricted, in the use of it, to the cases where the policy renewed was still valid as an insurance; and those who dealt with him were entitled to presume that no such restriction or qualification existed. He was authorized to accept risks, to agree upon and settle the terms of their insurance, and to carry them into effect by issuing and renewing policies on behalf of the defendant. This was sufficient to constitute him a general agent for the defendant at the place where the business of the agent was transacted, and he could as well exercise his authority by renewing and continuing a policy which had already expired as by making and issuing a new one.

"The agreement which, upon the evidence, the jury must have found existed in this case, did not of itself renew the insurance. But it imposed upon the defendant's agent the duty of doing whatever was necessary to effect a renewal of it. An agreement of that nature, either express or implied, must necessarily precede the renewal of any insurance, and a similar one is made to ascertain and determine the subject, term and rate of insurance in all cases where policies are issued. They are directly and necessarily within the employment and

authority of the agent, whose business could not be carried on without the power to enter into them, and the law does not require them to be in writing in order to become obligatory on the parties. They have often been the subject of judicial controversies, and always held binding on the principal, when fairly established by proof."

It can not be doubted that the company itself had the power to contract with the plaintiff, even after the 24th of February, 1923, that his buildings should be insured for a term of three years at the same premium and on the same condition as provided in the original policy, and to agree that that instrument should stand as the measure of the rights of the parties. It is difficult to escape the conclusion that Kavanaugh, as agent of defendant "to all intents and purposes," likewise had the power to enter into such a renewal contract and bind his principal, at least in the absence of any knowledge in plaintiff of limitations upon the authority as between the agent and the defendant, and that the jury might have so found. There is nothing in the policy to indicate that the renewal clause shall cease to become operative so as to make re-insurance on the same terms and conditions impossible without a new application, after the date fixed in the policy for its expiration. If there be uncertainty in this regard, it must be resolved against the defendant. Comp. Laws 1913, § 5914. If the policy had been renewed before it expired it is not contended that a new application would have been required. It can not be doubted that the parties by express agreement would have the power to enter into a contract, subsequent to the termination of the policy, and by reference adopt the terms and conditions of the policy, that is, renew it. We believe this construction is in harmony with what is commonly understood by the term "renew" or "renewal." It is well known that agreements and obligations are extended or renewed perhaps as frequently after maturity as before. Defendant's agent visited the premises, doubtless saw the property and was probably satisfied that there had been no increase in the hazard. The testimony shows and the offers of proof are to the effect that a contract was entered into between the agent and the plaintiff, whereby it was agreed that the contract of insurance was continued, renewed, for another period of three years upon the same conditions and for the same premium. The renewal agreement is definite and specific. It is evident that the defendant expected Kavanaugh to

act for it in renewal negotiations, for they so wrote him. There can be no doubt about the legal right of the plaintiff to assume, under the facts in this record, that the agent had the authority to renew the contract. It will not be questioned that the agent could have renewed the policy before it expired. McCabe Bros. v. Ætna Ins. Co. supra. The court should have permitted the plaintiff to prove the terms of the alleged renewal agreement with the agent of the defendant and submitted the issues of fact to the jury. He admitted that he had performed the acts enumerated in the statute. The power to renew the policy after its expiration may be fairly implied from the specific acts authorized, from the testimony, and the offers of proof.

For the reasons stated, the judgment must be reversed and a new trial granted. It is so ordered.

BRONSON, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.

On petition for rehearing.

JOHNSON, J. The purpose of statutes, like § 4959, Comp. Laws, 1913, is discussed in the petition for the rehearing. It is there said that it is primarily a penal statute providing a punishment for agents of insurance companies who do not procure certificates of authority; that "Chapter 112 of the Laws of 1903 of which this section is a part was a law providing for the licensing of insurance agents." It is then sought to distinguish this statute from the statute referred to in the Wisconsin case cited in the opinion, on the ground that the purpose of the Wisconsin statute is entirely different, namely, "to protect the public against unauthorized insurance agents." It is not easy to follow counsel. What is the purpose of regulating the business of insurance and of licensing insurance agents other than the protection of the public? The penal provisions do not constitute the primary purpose, rather the protection of the public who must deal with representatives of insurance companies whose residence is beyond the borders of the state. It is not very material what the language of the title is. The titles of the North Dakota Act, chapter 112, Session Laws 1903, and of the Wisconsin statute could be exchanged with entire propriety. The pur-

pose of the statutes and the means by which it is sought to be realized, are essentially and fundamentally the same. The penal provision is incidental—that the purpose to protect the public may be more certainly attained. It is said in 32 C. J. 1057: "For the purpose of protecting the insuring public, it is provided by statute in many jurisdictions that persons who solicit or contract for insurance shall be deemed to be the agents of the company. Under such a provision any person who acts with reference to the procuring of insurance is an agent of the company in which the insurance is procured, in all matters relating to the application and the issuance of the policy, although he is not otherwise recognized as its agent." See also Ætna Ins. Co. v. Kramer, 65 Okla. 165, 165 Pac. 179.

The purpose of the statute is very fully stated in several decisions. In Continental Ins. Co. v. Ruckman, 127 Ill. 364, 11 Am. St. Rep. 121, 20 N. E. 77, the court says: "The manifest intention was to make such companies responsible for the acts not only of its acknowledged agents, etc., but also of all other persons who in any manner aid in the transaction of their insurance business." In Norris v. Hartford F. Ins. Co. 57 S. C. 358, 35 S. E. p. 574, the court say:

"There is nothing in the policy issued by this insurance company which names any agent as such who can bind the company. This insurance company must remember that its contracts, made within our state limits, under our statute, are taken with section 1481, hereinbefore quoted, as a part of such contracts, and that this section 1481 does not in its use of the word 'agent' place any limitations upon his powers, so as to deprive anyone who deals with such agent with respect to a contract of insurance, made by such a one with the agent's insurance company, as to the principle of the right to impute knowledge of such agent as the knowledge of the principal."

The language of the statute referred to in the opinion, after reciting acts which may be done, is that a person performing any of the enumerated acts "shall be held to be acting as the agent of the company for which the act is done or the risk taken." In St. Paul F. & M. Ins. Co. v. Shaver, 76 Iowa, 282, 41 N. W. 20, the court say, speaking of a statute similar to 4959:

"The purpose of the statute was to settle, as between the parties to the contract of insurance, the relation of the agents through whom the

negotiations were conducted. Many insurance companies provided in their applications and policies that the agent by whom the application was procured should be regarded as the agent of the insured. Under that provision they were able to avail themselves, in many cases of loss, of defenses which would not have been available if the solicitor had been regarded as their agent, and many cases of apparent hardship and injustice arose under its enforcement, and that is the evil which was intended to be remedied by the statute, and it ought to be so interpreted as to accomplish that result."

It seems unnecessary to elaborate upon the purpose the legislature had in view in enacting §§ 4959 and 4926, with reference to resident agents of foreign insurance companies. The legislature did not provide for the licensing of insurance agents simply as a pastime; nor did it do so for revenue purposes. It was done unquestionably for the purpose of protecting the public against the various devices and diverse practices of foreign insurance concerns in framing applications and contracts of insurance so as to facilitate escape from liability by limiting the power and authority of agents or solicitors. It seems to have been the universal holding of the courts that such was the legislative intention. In the case at bar, the evidence shows that about the first of January, 1923, approximately two months before the policy was to expire, the defendant called the attention of its local agent to the fact that this policy would expire and apparently suggested that he commence renewal negotiations with the insured. Whether the agent was on the premises of the plaintiff primarily for the purpose of negotiating a renewal is quite immaterial; when there he discussed the renewal of the policy with the plaintiff, although he must have known that it had expired, agreed that it be renewed for another term of three years, and that the premium be paid the following June. It does not appear whether the agent Kavanaugh had renewal receipts in his possession, but it may be inferred that, inasmuch as he had authority to enter into renewal negotiations, he had the authority to collect the premium and to give an appropriate receipt therefor.

Reference is made to the fact that the application signed by plaintiff three years before contained limitations upon the authority of Kavanaugh. Under the statute, however, Kavanaugh "could not by any act of his shake off the character of agent for the company. Nor

could the company by any provision in the application or policy convert him into an agent of the insured." Continental L. Ins. Co. v. Chamberlain, 132 U. S. 304, 310, 33 L. ed. 341, p. 344, 10 Sup. Ct. Rep. 87. It will scarcely be contended that the company could, by stipulation in the policy, or the application, divest Kavanaugh of the character of an agent, to all intents and purposes, with which he was invested by the statute if he performed certain acts. Such, however, seems to be the contention, at least the intimation, of counsel for the respondent. There is, moreover, no express limitation in the application on the authority of Kavanaugh to renew the policy.

It is contended that section 4926, providing that no insurance company shall do business except through its authorized agents, who must have offices in the state, and that all policies not written in accordance with this section shall be void, was superseded by § 4961, and that the court overlooked this fact in the opinion written. Section 4961 was enacted as a part of chapter 100, Session Laws, 1901, and it is clear that that section does not supersede 4926. The two statutes are harmonious. It is intended by § 4961 to permit a foreign insurance company to issue policies of fire insurance at its offices outside the state, *provided* the policies are issued upon applications *through local agents,* who are licensed to do business in the state, and who *countersign* the policies. It is significant, furthermore, that § 4959 was enacted at the next session of the legislature, as chapter 112 of the Session Laws of 1903. It is not improbable that confusion arose in the minds of the public as a result of section 4961, enacted two years before, as to the status and authority of local agents who merely countersigned policies or took applications for fire insurance, and that the legislature determined to set this matter at rest by declaring all such persons agents of the insurance company to all intents and purposes. This statute was not overlooked, but it was not considered, and it is not now considered, of controlling importance in this case. It certainly is not in conflict with § 4959. Section 4961 does not, as counsel argues, give foreign insurance companies the power to enter into binding contracts of insurance otherwise than through the agency of residents licensed by the state. The title of the act is "An Act *in Relation* to the Transaction of Business By Fire Insurance Companies or Associations Otherwise Than Through Resident Agents." It is not an act *to authorize the*

*completion of fire insurance contracts* otherwise than through resident agents. The prohibition of 4926 remained in force, to the effect that no binding contract, *except through the agency of residents of the state,* could be made.

It is said, in the petition, that it appears, in McCabe v. Ætna Ins. Co. 9 N. D. 19, 47 L.R.A. 641, 81 N. W. 426, that the agent McBride had the power to *issue* and reissue policies. This is not a correct interpretation of the facts in that case, although a hasty reading of the second paragraph of the syllabus lands some color to the claim. The authority of McBride is set out in the first opinion in the case at bar and appears on page 21 of the official report. McBride did not have the power to issue policies; they were issued by the home office and countersigned by McBride. Otherwise, as stated in the opinion, the acts enumerated in the statute, which result in agency, are the acts which McBride had express authority to do and the court held that he was a *general agent.* It is not open to question any longer that a general agent may enter into a valid contract of insurance binding upon his principal.

Counsel says: "Is it just, and are insurance companies being given due protection of the law  .  .  .  to hold by judicial legislation that an insurance company may not assume that its liability under a policy has ceased when that policy has expired, and to place them in a position where they must fear that that liability will be revived without notice to them by a so called renewal, when concededly a new original policy could not have been issued, except by their home office?"

We do not understand it to be "judicial legislation" to apply statutes, the meaning of which can not be misunderstood. If the condition assumed arises because of the conduct of their licensed agent, it is not perceived that they have ground for complaint against any one but their own representative. Moreover, it is not conceded that a renewal could not have been effected without a new policy. The policy is silent as to the necessity of issuing a new policy on renewal of the old, or a new application, as the basis for a renewal. It would seem that we would be justified in taking notice of the universal custom of business men and of insurance companies in this state to renew policies of fire insurance year after year without new policies and without new applications. It is well known that the agent customarily renews the pol-

icies and sends the statement for the premium to the insured, frequently not until after the policy has expired. There seems little doubt in this case, had the premium been paid in June, pursuant to the alleged agreement between the plaintiff and Kavanaugh, that, but for the intervening fire, it would have been accepted and the policy would have been deemed renewed by both parties, the renewal dating from February 25, 1923.

Complaint is made in the petition that cases cited by the respondent are not considered or distinguished in the opinion. A desire to compress an opinion within reasonable limits sometimes compels this court to refrain from commenting on cases cited, especially if deemed not in point on any question in the case. In view of the ability and zeal with which counsel contend that our conclusion is erroneous, we may be justified in departing from this rule. One of the cases cited is Pacific Mut. L. Ins. Co. v. Carter, 92 Ark. 378, 123 S. W. 384, 124 S. W. 764. No statute is referred to and apparently Arkansas does not have a statute similar or analogous to §§ 4926 and 4959, Comp. Laws 1913. The facts tended to show that the agent was a soliciting agent only. It has been held, under statutes analogous to 4959 that the fact that the agent is merely a soliciting agent, that is, one who has power to take applications only, is immaterial and that he would nevertheless be an agent of the insurance company. St. Paul, F. & M. Ins. Co. v. Shaver, 76 Iowa, 286, 41 N. W. 20. In Wright v. Great Eastern Casualty Co. — Mo. App. —, 229 S. W. 440, the agent Miller had no authority to collect a renewal premium from the insured and it was held that, having no such authority, his knowledge of the fact that the insured was paying such renewal premium would not be binding on or imputed to the company. The authority of Miller in that case was to solicit *new* insurance and send the applications to the company for its approval or disapproval. In the case at bar, the record shows that Kavanaugh received notice from the company to enter into negotiations for the renewal of this policy—substantial evidence of authority to renew. The Alabama case of Insurance Co. of N. A. v. Thornton, 130 Ala. 222, 55 L.R.A. 547, 89 Am. St. Rep. 30, 30 So. 614, does not throw any light upon any issue in this case. The opinion is by a divided court. The majority opinion held that the insurance company was not bound by the acts of its duly authorized agent in territory outside of that limited

in his appointment, although the insured had no knowledge of such limitations. From this conclusion, Justice Tyson dissents. The majority opinion makes no reference to the statutes of Alabama. In Pickett v. German F. Ins. Co. 39 Kan. 697, 18 Pac. 903, the Supreme Court of Kansas held that where, after an application for fire insurance had been taken by an agent, the application reciting that there would be no insurance until its approval by the home office, and before such approval the property is destroyed by fire, there is no liability. Manifestly, here was a mere proposal, or offer, for insurance which was not accepted before the fire occurred. Whether the agent was a general agent or a soliciting agent was not material because the application expressly recited that no liability should attach until the application was approved by the home office. This clause appeared just before the signature of the plaintiff. In the Arkansas case of National U. F. Ins. Co. v. School Dist. 122 Ark. 179, L.R.A.1916D, 238, 182 S. W. 547, the situation was practically the same as in the Pickett Case, supra. In this case there was an application which recited that there should be no contract of insurance until the policy was issued and delivered. When the property is destroyed before the policy is issued, there of course is no protection. Mere delay, it was held, whether caused by negligence or otherwise, in passing upon the application could not be construed as acceptance thereof, or as constituting a cause of action for negligence grounded upon such delay. Moreover, there appears to be no statute in Arkansas similar or analogous to 4959, supra. The application signed by the plaintiff expressly provided that it should not be construed as a contract of insurance until approved by officers of the company. The Nebraska case of St. Paul F. & M. Ins. Co. v. Kelly, 2 Neb. (Unof.) 720, 89 N. W. 997, involves the same facts and principles—an application for fire insurance reciting expressly that there should be no liability until the policy was issued and the application approved, with destruction of the property before the approval of the application. There was no liability. It was held that there was no duty, in the circumstances, to accept or reject the application immediately upon its receipt at the home office. In this case the agent had no authority to make contracts of insurance for the company. His authority was limited to receiving applications and collecting premiums. In the case at bar, Kavanaugh evidently

had the authority to enter into renewal negotiations. Renewing the policy was apparently within the scope of its powers. In Lowe v. St. Paul F. & M. Ins. Co. 80 Neb. 499, 114 N. W. 586, also a Nebraska case, there was no liability because the property was destroyed before the application had been approved. No reference is made to the Nebraska statutes. This case was a hail insurance case. The New York case of Carter v. Brooklyn L. Ins. Co. 110 N. Y. 15, 17 N. E. 396, does not assist defendant. It is there held, under facts not at all analogous to those in the case at bar, that the word "renew" in a statute may be construed to apply to a policy that has not expired, as well as a policy that has expired or has been forfeited for nonpayment of the premium. By inference the court recognizes the fact that, from the standpoint of etymology, "renew" is more appropriate with reference to an instrument that has ceased to exist than it is to one still in force. It may be argued with some force that it is more appropriate to speak of *extending* an instrument that has not expired than of *renewing* it. Francis v. Mutual L. Ins. Co. 55 Or. 280, 106 Pac. 323, is a life insurance case decided by the Supreme Court of Oregon. It is difficult to see wherein that case aids the defendant. The court say, in distinguishing the authorities cited: "The cases cited by counsel for plaintiff are cases arising out of claims for fire insurance, where, by custom, local agents are permitted to issue temporary policies and assume temporary risks, even without policies." The agent clearly had no authority in that case to enter into a contract binding on the company for the insurance of the applicant until his application was approved. In Sharman v. Continental Ins. Co. 167 Cal. 117, 52 L.R.A.(N.S.) 670, 138 Pac. 708, the court held that one Wade, who had never been appointed agent of the defendant, but was an insurance broker, did not have authority to waive a stipulation in the policy that the same should be void unless the insured was the sole and unconditional owner of the property. California does not have a statute similar to § 4959. It is expressly stated in the opinion that "those declared by a statute of a state to be general agents" may have the power to make such a waiver.

It is strenuously contended that the case of Prichard v. Connecticut F. Ins. Co. — Mo. App. —, 203 S. W. 223, is not in point because the Missouri statute is different from ours. We have called attention to

the history of legislation in this state as to the doing of business by foreign insurance companies. By § 4926, it is provided that no insurance company "shall do business in this state except through its authorized agents" who must be residents. The Missouri statute, § 6315, Rev. Stat. 1919, provides that foreign insurance companies "shall make contracts of insurance upon property or interests therein only by lawfully constituted and licensed resident agents who shall countersign all policies so issued." The effect of the two statutory provisions, despite slight differences in phraseology, is the same; in neither state may a foreign company do business except through duly authorized local resident agents. In 1901, § 4961 was enacted, which authorized foreign companies to issue policies at their own offices, provided they were issued upon applications taken by local agents and the policies when issued countersigned by local agents. This enactment might be considered as a relaxation of the strict prohibition of § 4926, only to the extent that certain steps in the execution of the contract might be taken in the offices of the insurer outside the state. In 1903, the legislature, intending to remove all doubts upon the subject, enacted § 4959, making such local agents representatives of the insurance company "to all intents and purposes." The Supreme Court of Missouri, construing their § 6315, supra, held, in the Prichard case, that an agent who had the power to solicit applications—a soliciting agent —could bind his principal by an oral contract to insure. The court say that "it is no longer a question but that agents of a foreign fire insurance company, who have power to solicit and take applications, collect premiums, and countersign and deliver policies, may bind their principal by an oral contract of insurance." The court cites, in support of this doctrine, Sheets v. Iowa State Ins. Co. 153 Mo. App. 633, 135 S. W. 84, and Bealmer v. Hartford F. Ins. Co. — Mo. App. —, 193 S. W. 847. In Ferguson v. Home Ins. Co. 208 Mo. App. 422, 236 S. W. 402, speaking of the powers of a local agent under § 6315, supra, the court say:

"Defendant being a foreign corporation, licensed to do business in this state, accepts such license under the provisions of the statute and any rules, requirements, or provisions in its policies that may run contrary to the statutes are of no force and effect on policies written in this state."

After quoting from the Sheets Case, supra, the court continued:

"The legislature, in a further attempt to discourage such aggressions, required all contracts of insurance to be made by regularly constituted and lawfully licensed resident agents, who shall countersign the policies, so that when the insured receive his policy he would know that the local agent who signed it possesses power to make contracts for the company and to bind it, *as a general agent."* (Emphasis is ours.)

In Missouri, there is no express statute like § 4959. The holding of the court, therefore, in the Prichard and other analogous cases, is based upon § 6315, supra, on the theory that, inasmuch as the company is absolutely prohibited from transacting business in the state, except through an agent, such agent must be held to be the 'company's alter ego. In our state, the legislature has expressly said, in § 4959, not merely leaving it to implication, that persons in this state doing certain acts in behalf of foreign insurance companies shall be their agents to all intents and purposes.

If, under the facts in the record or in the offers of proof, it may not be said that a case for the jury was presented, we confess we are entirely at a loss to understand what meaning should be given to section 4959, making Kavanaugh the agent of the defendant to all intents and purposes.

The petition for rehearing is denied.

BRONSON, Ch. J., and BIRDZELL, NUESSLE, and CHRISTIANSON, JJ., concur.