315 F.2d 116
 HOUSTON FIRE & CASUALTY INSURANCE CO., a corporation, Appellant,
v.
Kenneth JONES, George Holderman, Donald F. Swan, Louise
Tripp, and Mary Nichols, Administratrix of the
Estate of Arvil Epps, deceased, Appellees.
 No. 7106.
 United States Court of Appeals Tenth Circuit.
 Feb. 20, 1963.
 
 Joseph A. Sharp, Tulsa, Okl. (Best, Sharp, Thomas & Glass, Joseph M. Best and Jack M. Thomas, Tulsa, Okl., on the brief), for appellant.
 Finis Smith, Tulsa, Okl. (John Cochran, Richard Gibbon and James Brown, Tulsa, Okl., on the brief), for appellees.
 Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 In an action for declaratory judgment on insurance coverage, the trial court found that the appellant insurer was obligated to defend actions brought in the Oklahoma state courts against appellees Jones and Holderman by the other appellees for damages incurred in an automobile accident and to indemnify them to the limits of an insurance binder issued the day before the accident. Appellant challenges the findings of fact, and the conclusions of the trial court holding the company responsible under a binder issued by an unlicensed employee of an agent of that company.
 
 
 2
 Earl B. Johnston was employed as a salesman for Jack H. Morse and Associates, a licensed and appointed policy-writing agent for the appellant, Houston Fire and Casualty Insurance Company. Johnston had never taken an examination requisite to obtaining either an agent's or solicitor's license in Oklahoma, 36 O.S.A. 1309, but had paid a fee upon his application and, according to his deposition, was under the impression that he was licensed to perform any of the functions delegated to the agency.
 
 
 3
 In the summer of 1960 Johnston contacted Kenneth Jones, an independent oil producer, in an attempt to sell casualty insurance on the vehicles and equipment owned by the partnership of Jones and Holderman. The partners were interested in obtaining insurance prior to moving some of the equipment to another leased location and on August 12, Jones telephoned Johnston with instructions to write insurance on a car, pickup and Johnston informed Jones that he would be covered by insurance as of that date. He went to Jones' house and received a check for $200 as an advance premium and began writing an insurance binder that afternoon. The binder was written on a form supplied to him by appellant during a course of instruction.
 
 
 4
 On the following day, August 13, 1960, Jones was involved in a serious accident while driving the truck. On that date, without knowledge of the accident, Johnston completed the binder, signing it 'Jack H. Morse, Agent, by Earl Johnston,' and mailed it to the insurance company.
 
 
 5
 Claims against Jones exceeded the $100,000 liability limits of the policy and when suit was brought against him, he demanded that the company settle the claims or take over his defense in state court actions. The company denied coverage but made no offer to return the money paid upon premiums. Jones brought this action and the other parties interested in the outcome of the suit joined him as plaintiffs.
 
 
 6
 Although the appellant here speculates darkly upon the possibility of fraud and collusion, the issue was not pleaded nor proved in the trial court and the sole issue remains whether the evidence supports the conclusion that:
 
 
 7
 'Plaintiffs have met the burden of showing either actual or apparent authority of Earl B. Johnston to write binders for the defendant Houston Fire and Casualty Insurance Company.'
 
 
 8
 Appellant contends that Johnston could not have actual authority to bind the company since he was not licensed in accordance with the requirements of statute, 36 O.S.A. 1307, and that if he could be deemed a solicitor wityhout a license, only the appointing agent would be responsible for his acts, 36 O.S.A. 1320[1] and that he was never appointed an agent of the appellant, 36 O.S.A. 1302. It further urges that under Oklahoma law apparent authority must find its inception in some act of the principal, relied upon by the person doing business with the agent, American National Bank of Sapulpa, Okl. v. Bartlett, 10 Cir., 40 F.2d 21; Rosser-Moon Furniture Co. v. Oklahoma State Bank, 192 Okl. 169, 135 P.2d 336 and argues that it is not even shown that Jones intended to do business with Houston Fire & Casualty Insurance Company and would have accepted whatever policy Johnston wrote.
 
 
 9
 Appellant acknowledges that prior to the enactment of the Oklahoma Insurance Code in 1957, a person designated as a 'soliciting agent'[2] for a company had the power to bind the company in regard to matters within the limited scope of his authority concerned with the preparation of applications for insurance, Commonwealth Life Ins. Co. v. Hutson, Okl., 271 P.2d 722; North American Accident Ins. Co. v. Canady, 196 Okl. 105, 163 P.2d 221; Globe & Rutgers Fire Ins. Co. v. Roysden, 208 Okl. 660, 258 P.2d 644. The often quoted language of Phipps v. Union Mut. Ins. Co., 50 Okl. 135, 150 P. 1083, defined the powers of a 'soliciting agent' under the former law:
 
 
 10
 'Ordinarily a mere 'soliciting agent' for an insurance company-- that is, one whose power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection-- has no power to bind the company to a contract of insurance; nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein.
 
 
 11
 'Such soliciting agent, however, can bind his company, with regard to matters within the limited and restricted scope of his authority; that is to say, in matters pertaining to the taking and preparation of the applications for insurance, for submission to the company.'
 
 
 12
 Under this doctrine it has been held that a soliciting agent's promise bound the company to insure and unborn child, Commonwealth Life Ins. Co. v. Hutson, to recognize the insured by an adopted name, North American Accident Ins. Co. v. Canady, to continue coverage of relocated property, Globe & Rutgers Fire Ins. Co. v. Roysden.
 
 
 13
 It is apparent that under the former law, the company would have been bound to honor, the commitments of a soliciting agent issuing a binder, even though he had no specific authority from the company to enter such a contract, Massachusetts Bonding & Ins. Co. v. Vance, 74 Okl. 261, 180 P. 693, 15 A.L.R. 981, quoting the language of Union Mut. Life Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L.Ed. 617:
 
 
 14
 'Insurance companies, who dobusiness by agencies at a distance from their principal place of business, are responsible for the acts of the agents within the general scope of the business intrusted to their care, and no limitations of their authority will be binding on parties with whom they dela, which are not brought to their knowledge.'
 
 
 15
 The general statutory functions and limitations of a 'Solicitor' under the present law and of a 'soliciting agent' under its predecessor are the same, but appellant maintains that the 1957 enactments so changed the classification of insurance agents as to render the former case law inapplicable, Standard Life & Accident Insurance Co. v. Cornelius, Okl., 340 P.2d 478, 481. Although recognizing aspects of change in the law, the Oklahoma Supreme Court in that case reindorsed the statement of the Phipps case, supra, defining the situations under which a soliciting agent might bind his company. And, more recently, the Cornelius case was confined to its facts under the language of Phipps, while many of the other pre-1957 cases discussed supra were cited with approval, Farmers Educational and Cooperative Union of America v. Bell, Okl., 366 P.2d 765.
 
 
 16
 In the case at bar Johnston had no specific contractual relationship with the insurance company and was not licensed as a soliciting agent for the company or for its general agent, Jack Morse and Associates. The record clearly shows, however, that notwithstanding the lack of specific contract and statutory authority, Johnston was given the implied authority to act as soliciting agent for the insurer. The company specifically instructed him on the technique of soliciting; instructed him specifically on the use of binders and furnished directly to him and for his use the actual binder forms. His authority or lack of it was never defined or explained to him and as a result he issued a binder, was permitted to sign the name of the general agent and to collect a premium. The very act that the company had trained him to do and furnished him the tools with which to do, he did.
 
 
 17
 Having concurred in this loose emphasis upon salesmanship to the derogation of the public interest sought to be protected by the Insurance Code, the insurer would now invoke the provisions of that law to avoid responsibility on an unprofitable transaction. A similar contention was made in Aetna Life Ins. Co. v. Kramer, 65 Okl. 165, 165 P. 179, and the court there found a duty in the insurer to police its representatives to determine their compliance with the law as to licensing. Section 3434, Revised Laws of the State of Oklahoma of 1910, substantially enacted in the present law as 36 O.S. 627, is cited as the source of that duty, of which the court stated:
 
 
 18
 'It is our view that the statutes * * * were enacted by the state, not for the protection and regulation of the intercourse of insurance companies and their agents, or to fix their contractual relations, but for the protection of the insuring public. An insurance company doing business in the state certainly could not violate the statute by failing to procure and pay for a license for its agents, and accept risks from unlicensed agents, and then invoke the provisions of the same law to establish the fact of the agency, and to fix the contractual relations of its agents to itself. As between the insured and the company, the defendants were * * * the agents of the company; but as to the relations of the insurance company and its agents the state is not or was not concerned, and their relations would depend upon contract. * * *' 165 P. at 180.
 
 
 19
 The duties of the insurer and agent with regard to the supervision of the licensing program as it affects their own business are emphasized in 36 O.S.A. 1320 (footnote 1, supra) and in 36 O.S.A. 1324 providing that no insurer shall pay a commission upon business written by an unlicensed agent or solicitor. These statutes require the aid of insurers in the regulations designed to protect the public and prohibit them from permitting unlicensed persons to act in their behalf. A violation of the duties imposed will not avoid liability to the public for representations of one who had implied authority to act for the insurer. In fact, its failure in this regard forges another link in the chain of circumstances justifying the conclusion that Johnston's authority to bind the company was implicit in their relations with each other. The judgment is affirmed.
 
 
 
 [1]
 'Restrictions as to solicitors
 'A. A solicitor shall not be appointed or licensed as to more than one agent. The solicitor's license shall cover all the kinds of insurance for which the appointing agent is licensed.
 'B. A solicitor shall not have authority to bind risks or countersign policies.
 'C. The transactions of a solicitor under his license shall be in the name of the agent by whom appointed, and such agent shall be responsible for the acts or omissions of the solicitor within the scope of his employment.
 'D. No individual shall be licensed as solicitor unless he intends to make and does make soliciting for insurance applications a principal vocation.
 'E. No licensed agent shall concurrently be licensed as a solicitor.
 'F. The soliciror's license shall remain in the custody of the agent by whom appointed. Upon termination of the appointment the agent shall give written notice thereof to the Board and deliver the license to the Board for cancellation.'
 
 
 [2]
 The term was defined in 36 O.S.1951 139 (Sec. 9, Ch. 174, S.l.1915):
 'F. The solicitor's license shall remain solicit insurance but who do not have authority to countersign policies.'