[File No. 6948]

O. O. ULLEDALEN, Respondent, v. THE UNITED STATES FIRE INSURANCE COMPANY, a Foreign Insurance Corporation, Appellant.

(23 NW2d 856)

Opinion filed July 31, 1946

*Nilles, Oehlert & Nilles*, for appellant.

592

*Walter O. Burk,* for respondent.

594

CHRISTIANSON, Ch. J. In this action the plaintiff seeks to recover for the loss of certain personal property which he claims that the defendant had insured against loss or damage by fire in the amount of $1000.00. In his complaint the plaintiff alleges

that on October 28, 1942, in consideration of the payment by the plaintiff to the defendant of a premium to be paid at the time the rate was determined by the defendant, the defendant made its policy of insurance in writing, thereby insuring the plaintiff against loss or damage by fire in the amount of $1000.00 on household and personal effects contained in a certain frame building in the City of Williston; that on the 9th day of November, 1942, while said policy was in full force and effect, the household and personal effects so insured were destroyed by fire; that the household and personal effects so destroyed were of the value of $1400.00; that plaintiff has fulfilled all the conditions of the insurance policy on his part, and that more than 60 days before the commencement of the action and immediately after said fire the plaintiff gave to the defendant due notice and proof of the fire and loss; that no part of the loss has been paid. Judgment is demanded for the full amount of the policy.

The answer denies generally the allegations of the complaint, except such as are specifically admitted. It denies that the defendant issued or delivered a policy of insurance to the plaintiff. It admits that the fire occurred but denies that the plaintiff sustained any loss, and alleges on information and belief that any loss or damage sustained by him was caused by and due to his own willful acts and procurement. It further alleges that subsequent to the fire the plaintiff made partial assignments to certain named persons of certain amounts claimed to be due to him under the policy; that such assignments are still outstanding, and that as a result the plaintiff is not the only real party in interest, and that persons holding such partial assignments should have been made parties to the action.

It is further alleged that the plaintiff never paid the premium on the policy which would have been due and payable in case such policy were issued and delivered as claimed by the plaintiff.

The case was tried to a jury upon the issues thus framed. At the close of the evidence and after both sides had rested, defendant's counsel moved the court to dismiss the action on the grounds that the plaintiff is not the only real party in interest;

that there is defect in the parties plaintiff, and that there are necessary parties to the action who have not been joined as parties plaintiff; that the undisputed evidence shows that prior to the commencement of the action the plaintiff made partial assignments of certain portions of his claim under the policy to certain named parties and that the policy was never delivered and effective as a contract of insurance between the plaintiff and the defendant.

The motion to dismiss was denied. Thereupon defendant's counsel moved for a directed verdict in favor of the defendant for a dismissal of the action upon the grounds stated in the motion to dismiss, and "upon the further ground that the evidence is conclusive in showing that O. O. Ulledalen willfully burned the residence and personal property which he claims was insured;" and that the plaintiff has failed to prove facts sufficient to constitute a cause of action "in solely his behalf" as claimed in the complaint. The motion for a directed verdict was denied and the case submitted to the jury. The jury returned a verdict in favor of the plaintiff for $630.00 with interest from November 9, 1942. Thereafter the defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. The motion for judgment notwithstanding the verdict was predicated on the grounds stated in the motion for a directed verdict.

The alternative motion for a new trial specified the following grounds: (1) Insufficiency of the evidence to justify the verdict and that it is against the law; (2) Errors in law occurring at the trial and excepted to by the defendant; (3) That the verdict is against the great weight of evidence and that the court in the exercise of sound discretion should grant a new trial; and (4) That the defendant is entitled to a new trial upon all the grounds specified in the motion for a directed verdict.

The alternative motion for a new trial stated the following specifications of insufficiency of the evidence: (1) That the verdict is against the evidence and the law; (2) That the evidence does not establish a cause of action against the defendant; (3) That the evidence clearly shows that any loss or damages sus-

tained by the plaintiff, O. O. Ulledalen, by reason of the fire described in plaintiff's complaint, was caused by and due to the willful acts and procurement of the plaintiff; (4) That the evidence is undisputed that subsequent to the occurrence of the fire and prior to the commencement of the action the plaintiff made partial assignments to certain persons of portions of the amount claimed by him to be due under the policy of insurance, and that as a result the plaintiff is not the only real party in interest, and that such partial assignees should have been made parties to the action; (5) That the undisputed evidence shows that the policy of insurance was never delivered by the defendant to the plaintiff and that such policy never became effective as a contract of insurance between the plaintiff and the defendant; (6) That the verdict is excessive and "that excessive damages were given by the jury under the influence of passion and prejudice;" and (7) That upon the entire record the court in the exercise of judicial discretion should grant defendant's motion for a new trial.

The trial court denied the motion for judgment notwithstanding the verdict and also denied the alternative motion for a new trial, and defendant has appealed from such order.

The appellant contends that the order appealed from should be reversed for the following reasons:

1. That the policy was not delivered and was never effective as a contract of insurance between the parties.

2. That the plaintiff willfully burned the personal property claimed to be insured under the policy.

3. That there is a defect of parties plaintiff arising from the partial assignments made by the plaintiff of certain portions of the amount claimed by him under the policy, which assignments were made after the loss and before the commencement of the action.

These contentions will be considered in the order stated.

The evidence shows that the plaintiff owned a dwelling house located in the outskirts of the City of Williston. On the same premises he had a small building in which he operated a shoe repair shop. In December, 1941, the agents of the defendant, Insurance Company, at Williston, North Dakota were Cunning-

ham and Rasmusson.  The plaintiff applied to that agency for fire insurance on his dwelling house and on December 9, 1941 policy No. 4512 was issued by the defendant Insurance Company countersigned by Cunningham  and Rasmusson, agents of the defendant at Williston, North Dakota, insuring the plaintiff Ulledalen for the term of one year against loss or damage by fire of said dwelling house in the sum of $1000.00.  Thereafter Cunningham and Rasmusson disposed of their insurance business to C. D. Grantier and he was appointed by the defendant Company and licensed by the Commissioner of Insurance, as defendant's agent at Williston.

Cunningham was called as a witness by the defendant and he testified that the plaintiff came to see him some two or three weeks before November 9, 1942, and stated that he wanted some insurance on his personal property, that is, on his household goods; that Cunningham then told him that they no longer handled insurance; that they had sold the insurance business to Grantier and that it would be necessary for Ulledalen to contact Grantier.

Ulledalen testifies that he went to see Grantier with respect to insurance on such personal property and that he talked with Grantier and that this conversation took place approximately three weeks before the fire.  As to what then occurred, Ulledalen testified:

"I asked him for a $1000.00 policy upon my household goods, and he said "all right," he said, and turned to Miss Snydal and asked her to make the application out, which she started to do, and I asked him what time or how long it would be before he would know what the premium would be, as I had previously asked him how long it would be, and he said he didn't know because he didn't know what the rate was up in our neighborhood; I asked him then how long it would be before he would know and he said as soon as the policy comes back, and I said "how long will that be," and he said, "you can figure the policy is in effect right now."   .  .  .

Q.  And did Mr. Grantier say anything to you as to when you should pay the premium?

A. He said: "As soon as I find out I will let you know."

Grantier was called as a witness. He testified that he is the agent at Williston of the defendant Company and was such agent in October and November, 1942. He further testified that one A. T. Russell at Fargo, North Dakota, was state agent for the defendant Company and that when someone applied for insurance, he (Grantier) would send the application to the state agent Russell, and a policy would be written in the office of such state agent Russell and transmitted to Grantier. Grantier further testified that ordinarily he would send the application but that at times he would send only a letter. Grantier testified that he had no recollection of the plaintiff Ulledalen calling on him in October, 1942 with respect to insurance; that he did not recall Ulledalen being there, but that "We have people come in from time to time and I don't remember who was in that long ago." There was exhibited to him what purported to be an original letter from the Grantier Agency to A. T. Russell, the state agent of the plaintiff. The letter reads as follows:

> "October 21, 1942
> Williston, North Dakota

Mr. A. T. Russell, State Agent
United States Fire Insurance Co.
Fargo, North Dakota
Dear Sir:
    Re:  O. O. Ulledalen, application
           Plot 4 of Liberty Home Addition
           Williston, North Dakota
Would you please insure the furniture of the above named for fire in the amount of $1000?

This risk should be figured at village rates as it is on the edge of the city instead of at regular city rates.

Trusting that this information is satisfactory, we are

> Yours very truly,
> GRANTIER AGENCY"

The letter bears the imprint of a stamp reciting that it was received on October 24, 1942 by A. T. Russell, Fargo, North Da-

kota. There were endorsed upon the letter with lead pencil two notations, the first reading, "Write inspection bureau requesting rate," and the second reading "Policy issued subject to rate." There is no dispute but that such letter was written by the Grantier Agency to and received by Russell, the state agent for the defendant Company. There is no denial that the notations on the letter were made in the usual course of business in the state agent's office.

Grantier testified that in October, 1942 he was about to leave for service in the armed forces of the United States and was in a hurry to arrange his affairs; that he arranged to have Cunningham and Rasmusson, the persons from whom he had purchased the insurance business, look after it during his absence, and that the records and files in his office relating to insurance matters were left with them, but that he continued to work until the day he left for military service,—November 3, 1942. Both Cunningham and Rasmusson testified that Grantier arranged with them to look after his insurance business and that the files and the records in his office relating to insurance were taken to their place of business, and that one Arlene Snydal, who had served as Grantier's secretary, came to their place of business and continued to look after the insurance work.

The evidence shows that Cunningham and Rasmusson were active officers of the First National Bank of Williston and that the files and records of the Grantier Agency were taken to the offices maintained by Cunningham and Rasmusson in the First National Bank building and the insurance business was carried on from there.

The First National Bank of Williston held a real estate mortgage on the plaintiff's dwelling house. As has been noted, there was a fire insurance policy on such dwelling issued December 9, 1941 insuring the property against loss by fire for a period of one year. Such policy was issued at the Williston, North Dakota Agency of the defendant Insurance Company and was countersigned by Cunningham and Rasmusson as agents of the defendant Insurance Company. There was attached to such policy a mortgage payable clause in favor of the First National

Bank of Williston. According to the testimony of Rasmusson and Cunningham, such policy was in the file of the bank relating to the plaintiff's mortgage. And according to the testimony of Rasmusson, he also found the policy involved in this suit covering the household goods in such file. He testified that he did not know the circumstances under which it was received or placed there. No evidence was introduced showing the transmittal of the policy in suit by A. T. Russell, the state agent, or any communications between Russell and Grantier with respect thereto, before the fire. There can be no question but that the policy was actually prepared by the state agent and transmitted to the Grantier Agency at Williston, and upon the trial counsel for the defendant Insurance Company specifically admitted that the policy was so prepared and transmitted.

The policy in suit is policy No. 6053. The blank or form used in preparing the policy read as follows:

"Fire Amount $...... Rate ...... Premium $......"

In the policy that was transmitted by the Russell Agency to the Grantier Agency these blanks had been filled in to read as follows:

"Fire Amount *$1000*. Rate *Subject to Rate* Premium *Subject to Rate*."

The policy contained the following provision:

"*IN CONSIDERATION OF THE STIPULATIONS HEREIN NAMED* and of *Subject to Rate* Dollars Premium Does Insure *O. O. Ulledalen* for the term of *one year* from the *28th* day of *October* 1942, at noon, to the *28th* day of *October* 1943, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding *One Thousand and no/100* Dollars, to the following described property while located and contained as described herein, and not elsewhere." (Here follows description of property insured and description and location of the building in which the property was contained.)

The concluding provision of the policy in suit reads as follows:

"In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid until counter-

signed by the duly authorized Agent of the Company at Williston, N. D.

David G. Wakeman          J. Lester Parsons
    Secretary                President
Countersigned
this *28th* day of *October* 1942 ....................... Agent."

The property described in the policy was destroyed by fire early in the morning of November 9, 1942. On that same day the Grantier Agency notified Russell, the state agent, of the loss in a letter which reads as follows:

"Williston, N. Dak.
November 9, 1942

Mr. A. T. Russell, State Agent
United States Fire Insurance Co.
Fargo, North Dakota

Re: Policy #4512 & 6053
O. O. Ulledalen
Dear Sir:

Mr. O. O. Ulledalen of Williston has suffered a loss by fire in connection with the above policies. This fire occurred this morning, and we have notified the Western Adjustment Company and await their representative.

Very truly yours,
GRANTIER AGENCY"

To this letter the state agent Russell replied:

"UNITED STATES FIRE INSURANCE COMPANY
Fargo, N. Dak.
Nov. 10, 1942

A. T. Russell
  State Agent
  Fargo, North Dakota
Grantier Agency
  Williston, N. Dak.
Gentlemen:                Re: Policies 4512–6053 and 4618
                          O. O. ULLEDALEN

We have your letter of the 9th advising us this assured suf-

fered a loss by fire and that you had notified the Western Adjustment and Inspection Company.

I am attaching hereto Notices of Loss which please complete in connection therewith and be sure and give us an estimated amount of the damage so that this information may go into the company before the proof.

You did not mention Policy 4618 which covers on the building but we presume if there was a loss on the other property, there is also a loss on the building.

Very sincerely yours,

A. T. Russell

STATE AGENT"

ES

Encl.

The laws of this state provide that "no person shall act as agent for any insurance company, except a domestic county mutual insurance company or a fraternal benefit society, and no officer, broker, agent or subagent of any insurance company shall act or aid in any manner, either directly or indirectly in transacting the business of insurance for such company or in taking or placing risks or effecting insurance, without first procuring from the commissioner of insurance a license or certificate of authority to transact business in this state." ND Rev Code 1943, § 26–1701. That except as otherwise provided, "the commissioner of insurance shall not issue any license or certificate of authority to write or countersign . . . contracts of insurance or to solicit . . . or effect such . . . contracts to any person who is not a legal resident of this state at the time such license or certificate is issued." ND Rev Code 1943, § 26–1702. That (with certain exceptions not applicable here), "No foreign . . . insurance company other than a life insurance company, shall issue any . . . policy of insurance . . . on property within this state except through a local agent who is commissioned and licensed regularly to transact insurance business therein." ND Rev Code 1943, § 1710.

"Any person who: 1. Solicits insurance on behalf of any insurance corporation, or on behalf of any person desiring insurance of any kind; 2. Transmits an application for a policy of

insurance, other than for himself, to or from any insurance corporation; 3. Makes any contract for insurance; 4. Collects any premium for insurance; or 5. Aids or assists in any manner in doing any of the things hereinbefore mentioned in this section or in advertising to do any such thing, shall be regarded as the agent of such corporation to all intents and purposes unless it can be shown that he receives no compensation for such services. This section shall not apply to fraternal benefit societies." ND Rev Code 1943, § 26–0702.

The meaning and effect of these statutory provisions were considered by this court in the following cases: Anderson v. Northwestern F. & M. Ins. Co. 51 ND 919, 201 NW 514; Michelson v. North American Nat. Ins. Co. 53 ND 391, 206 NW 225; and Bekken v. Equitable Life Assur. Soc. 70 ND 122, 293 NW 300.

Anderson v. Northwestern F. & M. Ins. Co. 51 ND 919, 201 NW 514, supra, involved an oral agreement by an agent of the insurance company to renew a policy of fire insurance, made after the original policy had expired. The original policy expired February 24, 1923 and the oral agreement to renew was made March 14, 1923. The property was destroyed by fire on March 15, 1923. The insurance company contended that the agent was without authority to make such oral contract and that it was not bound thereby. It introduced evidence tending to show limitations upon the authority of the agent, including certain provisions in the written application pursuant to which the original policy had been issued. In disposing of these contentions this court said:

"It will be noticed, first, that no insurance company may transact business in this state except through resident agents: secondly, that any person who solicits insurance in behalf of any company or transmits an application for a policy for a person other than himself, or who makes any contract for insurance, or who collects any premium for insurance, or who in any manner aids or assists in doing either, or in transacting any business of a like nature for an insurance corporation, is an agent of such company 'to all intents and purposes' unless it appears that he

receives no compensation for the service. The evidence and the offer of proof, if true, clearly show that Kavanaugh was a resident agent of the defendant; that he solicited insurance, transmitted applications, collected premiums and otherwise transacted an insurance business for and in behalf of the defendant. Under the statute, therefore, he would be an agent of the defendant 'to all intents and purposes.' It must be conceded that the situation is not different from what it would have been had the company expressly notified the plaintiff that Kavanaugh was their agent to 'all intents and purposes.' Evidence was put into the record by the defendant tending to show certain limitations upon the authority of the agent Kavanaugh, but there is no claim, or, at least, no evidence in the record showing, or tending to show, that the plaintiff knew of any such limitations. As far as the plaintiff was concerned, Kavanaugh was the agent of the defendant 'to all intents and purposes' and he was at liberty to deal with him accordingly." 51 ND 922, 923.

"It is said in 32 CJ 1057: 'For the purpose of protecting the insuring public, it is provided by statute in many jurisdictions that persons who solicit or contract for insurance shall be deemed to be the agents of the company. Under such a provision any person who acts with reference to the procuring of insurance is an agent of the company in which the insurance is procured, in all matters relating to the application and the issuance of the policy, although he is not otherwise recognized as its agent." 51 ND 928.

"Reference is made to the fact that the application signed by plaintiff three years before contained limitations upon the authority of Kavanaugh. Under the statute, however, Kavanaugh 'could not by any act of his shake off the character of agent for the company. Nor could the company by any provision in the application or policy convert him into an agent of the insured.' Continental L. Ins. Co. v. Chamberlain, 132 US 304, 310, 33 L ed 341, 344, 10 S Ct 87. It will scarcely be contended that the company could, by stipulation in the policy, or the application, divest Kavanaugh of the character of an agent, to all intents

and purposes, with which he was invested by the statute if he performed certain acts." 51 ND 929.

Michelson v. North American Nat. Ins. Co. 53 ND 391, 206 NW 225, supra, involved certain farm buildings situated on certain land, which the owner of the buildings occupied under a lease. The policy contained the following provision: "This entire policy unless otherwise provided by agreement, endorsed hereon or added hereto, shall be void if the subject of insurance be a building not owned by the insured in fee simple." The insurance company contended that the policy "was void according to its own provisions, because the buildings were located on land not owned by the plaintiff." The court stated that the contention was answered by the statute,—Section 4959, Comp Laws 1913, now ND Rev Code 1943, § 26–0702. Said the court, "It can not be contended that this application was transmitted for the agent. It was transmitted for Michelson, the insured, and the statute plainly says that the agent transmitting it shall be held to be the agent of such corporation to all intents and purposes. Since the agent of the insurance company had knowledge that the interest of the insured in the real property was that of a lessee and that the buildings were personalty, such knowledge is chargeable to the insurance company. When, therefore, it issued the policy it must be held to have waived the stipulation that it should be void if the insured did not own the premises in fee simple."

In Bekken v. Equitable Life Assur. Soc. 70 ND 122, 293 NW 300, supra, where an action was brought to recover for the negligent delay in acting on an application for insurance, this court said:

"Sundahl had authority to negotiate, write, and transmit, the application. Comp Laws 1913, § 4959; Security Ins. Co. v. Cameron, 85 Okla 171, 205 P 151, 27 ALR 444. In soliciting the insurance on behalf of the defendant company, in transmitting the application for the policy, and in collecting the premium, and in whatever he did to aid or assist the defendant in transacting such business, he was an agent of the defendant 'corporation to all intents and purposes.' Comp Laws 1913,

§ 4959. In so doing, he 'was merely the arm of the defendant; the obligation resting on him was the obligation of the defendant.' Stearns v. Merchants' Life & Casualty Co. 38 ND 525, 530, 165 NW 568, 570."

It is settled law in this state that a person duly licensed as an agent of a foreign fire insurance company, and who performs acts enumerated in ND Rev Code 1943, § 26–0702, relating to the business of such insurance company, and is thus to "be regarded as the agent of such corporation to all intents and purposes unless it can be shown that he receives no compensation for such services," has power to make a parol agreement on behalf of the company to renew a policy about to expire. McCabe Bros. v. Ætna Ins. Co. 9 ND 19, 81 NW 426, 47 LRA 641; Boos v. Ætna Ins. Co. 22 ND 11, 132 NW 222. He also has power to enter into a parol agreement for the company to renew the policy after it has expired. Anderson v. Northwestern F. & M. Ins. Co. 51 ND 919, 201 NW 514, supra.

It likewise is settled by the decisions of this court that such agent has power to waive provisions of the policy, including stipulations of non-waiver (McDowell v. Firemen's Fund Ins. Co. 49 ND 176, 191 NW 350; Ley v. Home Ins. Co. 64 ND 200, 251 NW 137) and that the company may become estopped from asserting the invalidity of the policy at the time it was issued for the violation of any of the conditions of such policy when the fact of such violation was known to such agent. Leisen v. St. Paul F. & M. Ins. Co. 20 ND 316, 127 NW 837, 30 LRA(NS) 539; Beauchamp v. Retail Merchants Asso. 38 ND 483, 165 NW 545; Yusko v. Middlewest F. Ins. Co. 39 ND 66, 166 NW 539; Michelson v. North American Nat. Ins. Co. 53 ND 391, 206 NW 225, supra. See also Continental L. Ins. Co. v. Chamberlain, 132 US 304, 33 L ed 341, 10 S Ct 87.

It logically follows that such agent also has authority to make a preliminary parol contract of insurance pending the issuance of a written policy. Anderson v. Northwestern F. & M. Ins. Co. 51 ND 917, 935, 201 NW 514; Stehlick v. Milwaukee Mechanics' Ins. Co. 87 Wis 322, 58 NW 379; Michigan Idaho Lumber Co. v. Northern F. & M. Ins. Co. 35 ND 244, 160 NW 130; Milwaukee

Bedding Co. v. Graebner, 182 Wis 171, 196 NW 533; Koivisto v. Bankers & M. F. Ins. Co. 148 Minn 255, 181 NW 580; Carlson v. Grimsrud, 223 Wis 561, 270 NW 50. See also Franklin F. Ins. Co. v. Colt, 20 Wall.(US) 560, 22 L ed 423; Quinn-Shepherdson Co. v. United States Fidelity & G. Co. 142 Minn 428, 172 NW 693; Eifert v. Hartford F. Ins. Co. 148 Minn 17, 180 NW 996; Schmidt v. Agricultural Ins. Co. 190 Minn 585, 252 NW 671.

The making of such preliminary oral contract is not something out of the ordinary, but is a common practice. Koivisto v. Bankers & M. F. Ins. Co. 148 Minn 255, 181 NW 580, supra; Milwaukee Bedding Co. v. Graebner, 182 Wis 171, 196 NW 533, supra; and 16 Am & Eng Enc Law 851, 852.

In Koivisto v. Bankers & M. F. Ins. Co. 148 Minn 255, 181 NW 580, supra, the Supreme Court of Minnesota said:

"We may not close our eyes to the fact that the local agent of an insurance company is the medium through whom the business of making insurance contracts is usually carried on. Such agents frequently make parol contracts for present insurance, and such contracts, if within the scope of the agent's authority, are perfectly valid. Quinn-Shepherdson Co. v. United States Fidelity & G. Co. 142 Minn 428, 172 NW 693; Wieland v. St. Louis County Farmers F. M. Ins. Co. 146 Minn 255, 178 NW 499; Eifert v. Hartford F. Ins. Co. 148 Minn 17, 180 NW 996.

An insurance agent's powers are prima facie co-extensive with the business intrusted to his care and will not be narrowed by limitations not communicated to those with whom he deals (Union Mut. F. Ins. Co. v. Wilkinson, 13 Wall.(US) 222, 20 L ed 617), and his authority is not to be narrowly construed (St. Paul, F. & M. Ins. Co. v. Parsons, 47 Minn 352, 50 NW 240); Kerr, Insurance, pp 153, 156. The power specifically granted to an agent carries with it by implication such other and incidental powers as are directly or immediately appropriate to the execution of the specific power granted."

American and English Encyclopedia of Law (16 Am & Eng Enc Law, 2d ed, pp 851, 852) says:

"For the sake of convenience, the contracts of fire and marine insurance usually .... exist in two forms: first, a prelimi-

nary contract intended to protect the applicant until the policy can be properly issued, and second, the executed contract or policy itself."

"This preliminary contract is of the greatest importance, for if the applicant could not be made secure until all the formal documents were executed and delivered, the beneficial effect of the insurance system would be greatly impaired; and a clause in the state insurance law or in the charter of an insurance company providing that policies shall be executed in a certain manner does not affect the power of the insurer to make these preliminary arrangements. Such a contract remains in force until it is superseded by the issuance of a regular policy, or until the risk is rejected by the insurer, and the insurer is liable for any loss in the meanwhile."

In Milwaukee Bedding Co. v. Graebner, 182 Wis 171, 196 NW 533, supra, the Supreme Court of Wisconsin said:

"We cannot ignore the fact, however, that in the business and insurance world oral contracts of fire insurance have been and are very prevalent. It is customary for business men to call up their insurance agent and place their order for fire insurance. It is considered by both parties that the coverage dates from the time when the insurance agent accepts the application. When the policy is written the coverage is dated from the time of the acceptance of the application, or the noon before, and the insured is charged with premium from that date.

It would operate as a serious disturbance of settled notions, as well as of the manner in which fire insurance business is conducted, to hold that the insured was without protection until the written policy was issued or delivered. We feel that the abolition of this long-settled custom requires express legislative declaration."

In this case it is conceded that in October, 1942 Grantier was duly licensed agent of the defendant Insurance Company. He was authorized to solicit insurance and to take and transmit applications for insurance to the state agent. The policies were prepared in the State Agent's office and transmitted to Grantier

to be countersigned by him and delivered to the insured. Grantier collected the premium. All the dealings by the insured with the company were had with Grantier. So far as the applicant for insurance was concerned Grantier was the company. There is no contention that Grantier did not receive compensation for his services. According to the testimony of the plaintiff there was an agreement that the insurance would be effective at once; that Grantier did not know the rate and hence could not state the amount of premium; and there can be no doubt but that it was understood that the premium to be charged was one established by the inspection or rating bureau for the risk. The testimony of the plaintiff is clearly corroborated by what subsequently transpired. The letter from Grantier to the state agent states that the city rate did not apply.

The notations, "Write inspection bureau requesting rate" and "Policy issued subject to rate," made in the state agent's office on Grantier's letter, and the recitals in the policy itself that the rate and the premium are both "subject to rate," tend to corroborate plaintiff's testimony concerning the conversation with Grantier.

The policy shows that plaintiff's application was accepted. The policy does not defer the attachment of the risk to some indefinite future time. It specifically provides that the term of insurance is for one year commencing at noon on the 28th day of October, 1942 and continuing till noon of the 28th day of October, 1943. The concluding paragraph of the policy recites that "In Witness Whereof, this Company has *executed* and attested these presents," and immediately following the sentence containing these words the facsimile signatures of the president and secretary of the company are attached, and while the policy has a blank space for the countersignature of the agent at Williston, the date of such signature was written in the policy in the state agent's office before it was transmitted to the Williston agent,—such date being the date stated in the policy for the attachment of the risk, namely, October 28, 1942.

It is conceded that the policy was transmitted by the state

agent to the Grantier Agency on or about October 28, 1942, and in the usual course of business the policy should have been received by the Grantier Agency a day or so later. There is no claim that it was not. Obviously, it was incumbent upon the defendant to have the policy countersigned and delivered. The delay in so doing is in no manner attributable to the plaintiff.

It will be noted the letter from the Grantier Agency to the state agent written immediately after the fire, as well as the letter from the state agent to the Grantier Agency in reply thereto, recognized the policy as being in effect. There is no reference to a pending application for insurance. The reference is to the policies Nos. 4512 and *6053* of the defendant Insurance Company to O. O. Ulledalen. The reference is to loss of property insured under such policies and in the letter from the state agent to the Grantier Agency it is requested that notices of loss under such policies be completed and submitted.

It is contended by the defendant that the insurance policy never became effective as a contract because: (1) No premium was paid; (2) The policy was not delivered to the insured; and (3) It was not countersigned by the agent at Williston.

The essential elements of a contract of insurance are the same as those of contracts generally. Such "contract is a promise, or set of promises, for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Am Law Inst Restatement, Contracts, § 1; 1 Williston, Contracts, Rev ed, § 1. "A contract is an agreement which creates an obligation. Its essentials are competent parties, subject matter, a legal consideration, mutuality of agreement and mutuality of obligation." 17 CJS p 310. A fire insurance contract is an agreement between the insured and the insurer whereby the insurer for a legal consideration agrees to indemnify the insured against loss of or damage to certain property by fire.

Where there are competent parties and a proper subject matter, the basic question whether there is or is not a valid contract of insurance resolves to whether there has been an agreement,— whether there has been a meeting of the minds of the parties,—

as to the thing to be done, and whether there is a legal consideration.

"As in other contracts, a contract of fire insurance consists generally of two prerequisites, an offer or application and its acceptance." 26 CJ p 53, § 43, CJS., Insurance, § 232.

"The acceptance of the offer or application completes the contract and binds the insurer, although the policy has not yet been issued or delivered." 29 CJ p 54, § 45. See also Herring v. American Ins. Co. 123 Iowa 533, 99 NW 130; 1 Joyce, Insurance, 2d ed, § 55, p 231.

"When an application for insurance is presented to an insurance company, stating what is wanted, and the terms, and its officer or any agent having authority accepts the risk, the contract is complete." 16 Am & Eng Enc Law 2d ed, p 850.

In the absence of a statute or an agreement to the contrary the validity and operative effect of a fire insurance contract or policy is not dependent upon the prepayment of the premium. 29 Am Jur 168, Insurance, § 153; 1 Couch, Insurance, p 191; 16 Am & Eng Enc Law 2d ed, p 857; 44 CJS p 1075; Commercial Mut. M. Ins. Co. v. Union Mut. Ins. Co. 19 How(US) 318, 15 L ed 636. See also Stehlick v. Mechanics' Ins. Co. 87 Wis 322, 58 NW 379, supra, and Anderson v. Northwestern F. & M. Ins. Co. 51 ND 917, 201 NW 514, supra.

American Jurisprudence (29 Am Jur 168, Insurance, § 153) says:—

"In the absence of any express provision in such respect, the actual prepayment of the premium on a policy is not a condition precedent to the consummation of the contract and assumption of risk by the insurer, since the obligation of the insured to pay is a good consideration for the promises of the insurer."

A contract of insurance may be consummated without the actual or manual delivery of the policy, unless delivery is required by agreement of the parties. 29 Am Jur 163, Insurance, § 147; 44 CJS p 1055, § 265; 1 Couch, Insurance, pp 222 et seq, §§ 117, 118; 1 Joyce, Insurance, 2d ed p 310, § 90. See also Herring v. American Ins. Co. 123 Iowa 533, 99 NW 130, supra.

The countersigning of the policy by the agent is a ministerial act of authentication. 1 Couch, Insurance, p 185; Winsor v. Hunt, 29 Ariz 504, 243 P 407, 411. To "countersign" an instrument is to sign what has already been signed by a superior; to authenticate by an additional signature. Gurnee v. Chicago, 40 Ill 165, 167; Waldo Bros. Co. v. Downing, 131 Me 410, 163 A 787, 789; Eliot Nat. Bank v. Woonsocket Electric Mach. & P. Co. 31 RI 57, 76 A 782, 787. The absence of the countersignature of an agent to an insurance policy does not render the policy inoperative where the intention to execute the instrument and the intention that it shall be effective is otherwise sufficiently plain. Westchester F. Ins. Co. v. Earle, 33 Mich 143; Kantrener v. Penn Mut. L. Ins. Co. 5 Mo App 581; Post v. Ætna Ins. Co. 43 Barb(NY) 351; Norton v. Phoenix Mut. L. Ins. Co. 36 Conn 503, 4 Am Rep 98; Dillon v. General Exch. Ins. Corp. (Tex Civ App) 60 SW2d 331. The countersigning of the policy was a matter for the insurance company. The insured had no duty with respect thereto. In the very nature of things the failure of the insurer to perform such act cannot be made the basis of defense against liability. Protective Mut. Ben. Asso. v. McCuistion (Tex Civ App) 66 SW2d 511; Westchester F. Ins. Co. v. Earle, 33 Mich 143, 151.

Here it was agreed that the insurance should be effective from the date the application was made. The agent of the insurer did not know the amount of the premium to be charged and it was agreed that the insured should pay the established rate. Naturally there could have been no countersigning and no delivery or payment of premium before the risk attached under the agreement then made. In preparing and issuing the policy the defendant Insurance Company recognized the conditions agreed upon, and issued a policy in the sum of $1000.00 covering the property to be insured, and it stated in such policy that the amount of premium should be subject to rate. The company did not defer the effective date of the policy until after it was countersigned. It inserted the date and hour when the risk should attach. In the provision in the policy relating to the countersignature by the agent it is stated, "In Witness Whereof,

this Company *has executed* and attested these presents." At the time the policy was so executed the defendant Insurance Company knew that it could not be countersigned by its agent at Williston at or prior to the time fixed in the policy for the attachment of the risk. It therefore must have been the intention that the policy should become effective and that the risk should attach before the policy was countersigned and without regard to the countersignature. Goss v. Security Ins. Co. 113 Cal App 577, 298 P 860; Stewart v. Hemphill (Tex Civ App) 245 SW 123.

It is next contended by the defendant Insurance Company that the evidence clearly shows that the plaintiff intentionally and willfully burned the dwelling house and household goods, and that consequently he cannot recover for the loss.

The transcript of the proceedings had and the evidence adduced upon the trial contains some 311 typewritten pages. The greater portion of the testimony of the witnesses called by the defendant and the cross-examination of the plaintiff was devoted to an attempt to "develop the claim that the fire was incendiary, and that plaintiff" had willfully set it. The plaintiff was subjected to the most intense cross-examination. The record of such cross-examination covers more than 150 pages of the typewritten transcript. There seems to have been no limit to the range of the cross-examination. Inquiries were made concerning almost every conceivable phase of plaintiff's life, including his personal habits, his marriage relations, even whether he at one time had been a recipient of relief. A number of the questions propounded to him directly insinuated that he had set the fire. Certainly defendant's counsel was afforded every opportunity to make inquiry and to adduce evidence having any possible bearing upon the question whether the plaintiff had set the fire. No good purpose would be subserved by reciting the incidents or testimony which defendant's counsel relies upon, and it would unduly lengthen this opinion to do so. According to plaintiff's testimony he was innocent of any wrongdoing with respect to the fire. We are agreed that the evidence falls short of establishing as a matter of law that the plaintiff set the fire, or that the evidence to that effect is so strong as to require that a new

trial be granted because the verdict is contrary to the evidence. We are of the view that the most that can be said is that there was evidence sufficient to require that the question be submitted to the jury. It was so submitted under direct and specific instructions. The jury decided the question against the defendant. On the subsequent motion for judgment notwithstanding the verdict or for a new trial, the trial court,—as we think correctly,—refused to interfere with the jury's determination.

It is next contended that there is a defect of parties plaintiff and that "the plaintiff is not the only real party in interest." This contention is predicated upon the proposition that subsequent to November 9, 1942, when the insured property was destroyed by fire, the plaintiff "made partial assignments" to different persons of certain portions of the amount which he claimed to be due to him from the defendant Insurance Company for the fire loss.

In the answer it is alleged that subsequent to the occurrence of the fire the plaintiff "made partial assignments of his alleged loss and cause of action and alleged amounts due him under such policy because of such fire to Walter O. Burk and Falstad Lumber Company, a corporation; that such assignments are still outstanding and in existence, and are owned by said assignees, and that as a result thereof, the plaintiff is not the only real party in interest in the prosecution of plaintiff's alleged cause of action under said policy, and that said Walter O. Burk and Falstad Lumber Company, a corporation, are not, and should have been, made parties to this suit, and as a result thereof, there is a defect in parties plaintiff, and a splitting of the alleged cause of action as set forth in plaintiff's complaint herein."

During the cross-examination of the plaintiff, defendant's counsel made inquiry concerning the assignments to Burk and Falstad Lumber Company. Counsel presented to the plaintiff carbon copies of two letters addressed to the defendant Insurance Company, Russell, the state agent, Grantier, the local agent at Williston, and the First National Bank of Williston. One letter concerned the assignment to Falstad Lumber Company. In such letter it is stated that he (plaintiff) is indebted

to the Falstad Lumber Yard of Williston, N. Dak. in the sum of $65.69, and that he assigns, transfers and sets over to the said Falstad Lumber Yard the sum of $65.69 out of the money that is due him as fire insurance on his house and personal property. The other letter concerned the assignment to Burk. It was to like effect with the exception that the amount of the indebtedness to Burke is stated to be $50.00. These letters were dated November 3, 1942. After these letters had been introduced in evidence defendant's counsel asked plaintiff, "How many other assignments of this nature did you execute after the fire?" The plaintiff answered that he had executed one to Johnie Volk, one to the Model Cafe, and one to Dr. Payne; that these assignments were given in the latter part of December, 1942 or the first part of January, 1943.

Thereafter plaintiff's counsel offered in evidence written instruments entitled "Cancellation of Assignment," executed and acknowledged by the five persons to whom the plaintiff had given a partial assignment. There was a separate instrument executed and acknowledged by and for each of the five partial assignees. Each of such written instruments referred to the assignment that had been made by the plaintiff "to the undersigned" and thereupon recited that "the undersigned," that is, the person who executed the "Cancellation of Assignment," "do hereby in all things release and cancel said assignment and do hereby release and discharge the U. S. Fire Insurance Company of Freeport, Illinois from any and all liability by reason of said assignment." The instruments releasing and cancelling the assignments to Walter O. Burk and to the Falstad Lumber Company were executed and acknowledged before a notary public November 8, 1943. This action was commenced November 26, 1943. The three instruments releasing respectively the assignment to J. H. Volk, to the Model Cafe, and to Dr. Payne were acknowledged January 22, 1944,—some two days before the commencement of the trial of this action. When such releases and cancellations were offered in evidence defendant's counsel interposed the following objection:

"To the offer the defendant objects solely on the ground that

the same are immaterial. We do not object on any other ground, and we admit, for the purpose of the record, that they were duly executed by the persons purporting to execute these documents, and that they were executed on or about the date they bear. In other words, our objection goes solely to the materiality in this lawsuit of any purported cancellation of the assignments."

Under the facts shown by the record on this appeal we find it unnecessary to determine whether (in view of the fact there had been no consent by the defendant to any of such assignments, and no acceptance thereof by the defendant) the partial assignments operated to vest in any of the assignees a right of action against defendant. See 4 Am Jur 279, Assignments; 6 CJS pp 1087, 1088.

However, a partial assignment, resulting in a splitting of a cause of action, does not operate to extinguish a claim or to bar an action for any part thereof. Fireman's Fund Ins. Co. v. Oregon R. & Nav. Co. 58 Wash 332, 108 P 770; Robbins v. Wyman, 75 Wash 617, 135 P 656.

If in any action, there is a defect of parties plaintiff because some person who has not been joined has such interest in the subject matter as to require that he be joined as a party, this does not result in there being no cause of action. The result is merely that there is a defect of parties plaintiff, and this defect may be cured by amendment.

The rule of the strict common-law practice that if a plaintiff made a mistake as to the persons who should have been made parties and omitted to join a proper party he could not thereafter add new parties, whether plaintiff or defendant, by amendment of his pleading and process has never prevailed in this state and has been supplanted throughout this country generally by statutes and rules of practice which make provision for adding parties omitted in the first instance and in general have adopted the rules governing chancery practice. 39 Am Jur 954, 955, Parties, § 84. Note: Ann Cas 1916C 593.

"It is now the almost universal practice at law as well as in equity, in cases where there is a defect of parties, for the court in its sound discretion, either upon proper motion of a party to

the action or upon its own motion, to direct that other persons be made parties and brought before the court to the end that substantial justice may be done. It is only everyday practice to bring in new parties plaintiff or defendant by way of amended pleadings. . . . New parties may be brought in at any time before or after trial and before final judgment or decree is rendered, provided all rights are properly considered and protected, and such parties are ordinarily brought in by amendments to the pleadings and process and by their voluntary appearance or by the service of process as upon an original party." 39 Am Jur 955, Parties, § 84. See also 20 Standard Enc Proc pp 953, 958, 959; 47 CJ pp 124, 133, 134.

"An objection to parties, whether to a misnomer, a nonjoinder, or a misjoinder, may, under modern practice, be remedied by amendment of the process and pleadings. Authority is now generally conferred upon the courts, by the practice statutes and rules of practice, to amend any pleading or proceeding at any time during trial or after judgment, on such terms as may be proper, by adding, striking out, or correcting a mistake in the name of a party." 39 Am Jur 1001, 1002, Parties, § 123.

The law in force in this state provides:

"The court, before or after judgment, in furtherance of justice, and on such terms as may be proper, may amend any pleading or proceeding by:

"1. Adding or striking out the name of any party;

"2. Correcting a mistake in the name of a party or a mistake in any other respect;

"3. Inserting other allegations material to the cause; or

"4. Conforming the pleading or proceeding to the facts proved when the amendment does not change the claim or defense substantially.

"Whenever any proceeding taken by a party fails to conform in any respect to the provisions of this code, the court, in like manner and upon like terms, may permit an amendment of such pleading or proceeding, so as to make it conformable thereto." ND Rev Code 1943, § 28-0737.

Under this statute a judgment may be vacated on the applica-

tion of the party in whose favor it was rendered for the purpose of bringing in additional defendants who are necessary parties to a complete determination of the plaintiff's rights. Dedrick v. Charrier, 15 ND 515, 108 NW 38, 125 Am St Rep 608.

The rule against splitting causes of action exists mainly for the protection of the defendant and is intended to safeguard him against the vexations and burdens incident to a duplication or multiplication of actions to enforce a liability for which one suit would be sufficient and to avoid the costs and expenses incident to numerous suits on the same cause of action. 1 CJS p 1308. The rule against partial assignments is a corollary to the rule against splitting actions and was established for the benefit of the debtor on the principle that a creditor cannot by assignment of a part of his claim require his debtor to split up the amount and pay it to different persons unless the debtor consents to such arrangement. 6 CJS Assignments, p 1088, § 39. Hence, "the objection to a partial assignment of a debt is personal to the debtor and cannot be raised by a third person. And the right to raise such objection may be waived by the debtor." 4 Am Jur 280, 281, Assignments, § 65.

Since the court has the power to allow an amendment adding a party or parties plaintiff and has the power upon its "own motion whenever it is necessary for complete administration of justice to bring other parties before it, there is no reason why additional parties should not be allowed to come in voluntarily." 39 Am Jur 959, Parties, § 87.

Corpus Juris (47 CJ p 202, § 389) says:

"A defect of parties plaintiff may be cured by the voluntary appearance and joinder of the missing plaintiff, or by an amendment in a proper case, or by failure to interpose an objection."

It is a maxim of our jurisprudence that "when the reason of a rule ceases so shall the rule itself;" also, that "the law regards form less than substance." ND Rev Code 1943, § 31–1105, subds 1 and 19.

An objection by a defendant that there is a defect of parties plaintiff is met when the necessary omitted parties have been joined as parties plaintiff in the action. Such objection is met,

also, where it is shown that the omitted parties have ceased to have any interest in the subject matter,—as for instance, where they have relinquished their interest under the partial assignments and revested the same in the plaintiff. Fireman's Fund Ins. Co. v. Oregon R. & Nav. Co. 58 Wash 332, 108 P 770, supra. So when, as here, the defendant in a suit brought by the original owner of a claim makes objection that such owner has made partial assignments of his claim to other persons who are not made parties to the action, and that consequently there is a defect of parties plaintiff, the object of the rule against splitting actions and against partial assignments is fully accomplished where the persons to whom such partial assignments were made cancel the assignments or reassign their interests under the partial assignments to the original owner and thus reinvest the original owner with all interests that were transferred by the partial assignments, and release the debtor from any claim or right of action acquired by the assignees under the partial assignments. Fireman's Fund Ins. Co. v. Oregon R. & Nav. Co. supra; Robbins v. Wyman, 75 Wash 617, 135 P 656, supra. In such case the debtor is afforded opportunity to litigate the entire claim in one action and is further afforded the opportunity to pay his debt,—whatever it may prove to be,—in a single transaction and thus be relieved of all responsibility upon the claim by a single payment to the original debtor.

It follows from what has been said that the order appealed from must be affirmed. It is so ordered.

MORRIS, BURKE, NUESSLE and BURR, JJ., concur.